UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ISMET G.,

                            Plaintiff,

                                                                6:19-CV-1175
v.                                                              (GTS)

ANDREW M. SAUL, Commissioner of the
Social Security Administration,

                            Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC               JOSEPH M. GOLDSTEIN, ESQ.
  Counsel for Plaintiff                           KENNETH R. HILLER, ESQ.
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

SOCIAL SECURITY ADMINISTRATION                    SEAN SANTEN, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I                Special Assistant U.S. Attorney
Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Ismet G. ("Plaintiff") against the

Commissioner of Social Security Andrew Saul[1] ("Defendant") pursuant to 42 U.S.C. §§ 405(g)

and 1383(c), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's

motion for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below,

_____

[1]      Andrew Saul was sworn in as the Commissioner of the Social Security Administration on
June 17, 2019.

Plaintiff's motion for judgment on the pleadings is denied, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1957, making him 57 years old at his alleged onset date and 61 years old at the date of the ALJ's decision.  Plaintiff reported having an 8th grade education from Bosnia.  He also reported past work as a truck driver and machine operator.  In his application, Plaintiff alleged disability due to blindness in his right eye, vision problems, diabetes, high blood pressure, anxiety, depression, and sleep problems.

### B.     Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on May 26, 2016.  Plaintiff's application was initially denied on September 2, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Jude B. Mulvey on August 28, 2018.  On October 5, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 13-24.)[2] On July 24, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 15-24.)  First, the ALJ found that Plaintiff has not engaged in substantial

---

[2]     The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

gainful activity since his application filing date.  (T. 15.)  Second, the ALJ found that Plaintiff's

vision impairment, obesity, and diabetes are severe impairments, while his high cholesterol,

hypertension, gastroesophageal reflux disease, diverticulitis, anxiety, depression, and sleep

problems are not severe impairments.  (T. 16-17.)  Third, the ALJ found that Plaintiff's severe

impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404,

Subpart P, App. 1 (the "Listings"); specifically, the ALJ considered Listings 2.02, 2.03, and 2.04.

(T. 19.)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

perform

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c)
> except: the claimant cannot perform work requiring more than
> occasional far acuity, and more than frequent near acuity and depth
> perception; and the claimant can only occasionally stoop, kneel,
> crouch, crawl, and climb stairs.  The claimant can handle large
> objects and can avoid ordinary hazards.

 (T. 19.)  Fifth, the ALJ found that Plaintiff cannot perform his past relevant work.  (T. 22-23.)

Sixth, the ALJ found that Plaintiff is not disabled because he remains able to perform a

significant number of jobs in the national economy, including cook helper and hand packager.

(T. 24.)  The ALJ therefore concluded that Plaintiff is not disabled.

### D.    The Parties' Briefing on Their Motions

#### 1.    Plaintiff's Motion for Judgment on the Pleadings

Generally, in his motion, Plaintiff makes two arguments.  (Dkt. No. 11, at 13-25 [Pl.'s

Mem. of Law].)  First, Plaintiff argues that the ALJ's RFC finding is unsupported by substantial

evidence.  (*Id.* at 13-22.)  More specifically, Plaintiff argues the following: (a) the ALJ failed to

properly weigh the opinion from treating physician Dr. Breslow in that he (i) failed to provide

good reasons for rejecting the limitations opined by Dr. Breslow, (ii) failed to discuss all the

required factors, including Dr. Breslow's lengthy treating relationship and the methods of

treatment used, (iii) failed to identify evidence that was inconsistent with Dr. Breslow's opinion

and ignored evidence that was consistent with that opinion, (iv) improperly put his lay opinion

and interpretation of medical data above Dr. Breslow's expertise, and (v) failed to recontact Dr.

Breslow for clarification about how Plaintiff's impairments caused the opined functional

limitations; and (b) even if the ALJ weighed Dr. Breslow's opinion appropriately, the ALJ's

finding that Plaintiff can perform medium work is not supported by substantial evidence given

that no opinion suggests an ability to perform work at that exertional level, and this matter

should be remanded for calculation of benefits because the record clearly shows that Plaintiff

cannot perform medium work and he would need to be found disabled pursuant to the Medical-

Vocational Guidelines if limited to light or sedentary work.  (*Id.*)

Second, Plaintiff argues that the ALJ's assessment of Plaintiff's subjective symptoms is

not supported by substantial evidence because he did not address any of the relevant factors and

did not provide any explicit reasons for finding that Plaintiff's self-reports were not credible.

(*Id.* at 23-25.)

### 2.      Defendant's Motion for Judgment on the Pleadings

Generally, in his motion, Defendant makes two arguments.  (Dkt. No. 12, at 7-20 [Def.'s

Mem. of Law].)  First, Defendant argues that the ALJ's RFC finding is supported by substantial

evidence.  (*Id.* at 7-17.)  More specifically, Defendant argues the following: (a) the restrictions in

the RFC are supported by the opinion of Dr. Gale, who was a specialist in the area of visual

impairments, and Dr. Cole, who noted minimal objective abnormalities on examination, and the

ALJ's reliance on these opinions is supported by substantial evidence; (b) the ALJ provided good

reasons for declining to afford greater weight to Dr. Breslow's opinion (specifically that it was

not supported by the objective evidence as a whole, was inconsistent with the opinions and

4

observations of other treating sources, and did not provide any explanation for the limitations),

and he also considered the relevant factors, including Dr. Breslow's treating relationship with

Plaintiff; (c) the ALJ was not required to recontact Dr. Breslow because the record here is

adequate and does not contain any obvious gaps; (d) the ALJ did not impermissibly interpret raw

medical data or rely on his own lay opinion because he relied on the opinions of physicians and

merely reconciled the conflicting opinion evidence as he was required to do; and (e) the finding

that Plaintiff can perform medium work is supported by substantial evidence because Plaintiff

has not pointed to any evidence of an impairment that would cause greater limitations in his

abilities to sit, stand, walk, lift, or carry.  (*Id.*)

Second, Defendant argues that the ALJ's evaluation of Plaintiff's subjective symptoms is

supported by substantial evidence because the ALJ addressed multiple factors that were relevant

in this case, including inconsistency of Plaintiff's reports with the evidence, the fact that many of

his conditions were well-controlled on medication, his reports that he was not experiencing

symptoms like dizziness and headaches on most evaluations, inconsistency of Plaintiff's reports

of functioning with his reports of his activities of daily living, and the particulars of his

symptoms, his medications and his other treatments.  (*Id.* at 17-20.)  Defendant also argues that,

because substantial evidence supports the ALJ's assessment, the Court should not second-guess

the ALJ's findings.  (*Id.*)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

6

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III.    ANALYSIS

### 1.    Whether the ALJ's RFC Finding is Supported By Substantial Evidence

7

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 12, at 7-17 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff primarily argues that the ALJ erred in failing to afford controlling (or at least significant) weight to the opinion from treating physician Dr. Breslow.  Although the opinions of treating physicians are generally afforded deference, the ALJ need not afford such an opinion controlling weight if it is inconsistent with the other substantial evidence in the record and not well-supported by the medically accepted clinical and laboratory diagnostic techniques; where the treating physician's opinion is not so supported, the ALJ must provide "good reasons" for the weight he affords to that opinion.  *Darron O. v. Saul*, 20-CV-0090, 2020 WL 6498717, at *6 (N.D.N.Y. Nov. 5, 2020) (Mordue, J.) (citing *Church v. Colvin*, 195 F. Supp. 3d 450, 453 [N.D.N.Y. 2016]; 20 C.F.R. § 404.1527[d]).  Recently, the Second Circuit reiterated the specific procedure for weighing a treating physician opinion: first, the ALJ must decide whether the treating physician's opinion is entitled to controlling weight; and second, if the ALJ decides that the opinion is not entitled to controlling weight, he must determine how much weight to give it by "explicitly consider[ing]" the relevant factors.  *Darron O.*, 2020 WL 6498717, at *6 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95-98 [2d Cir. 2019]).  The factors the ALJ must consider are (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist.  *Darron O.*, 2020 WL 6498717, at *6 (quoting *Estrella*, 925 F.3d at 95-96).  Although the Second Circuit found that failure to explicitly consider these factors constitutes a procedural error meriting remand, it also recognized that such failure would not require remand where a "searching review of the record assures the reviewing

8

court that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at

95-96

On August 13, 2018, treating physician Roger A. Breslow, M.D., noted that Plaintiff had

diagnoses of hypertension, diabetes, blindness in his right eye, and diminished vision in his left

eye. (T. 520.)  Dr. Breslow opined that these diagnoses made Plaintiff incapable of even low

stress work. (*Id.*)  He opined that Plaintiff could walk two city blocks without rest or severe

pain, could sit for one hour at one time, stand for one hour at one time, sit for less than two hours

total, and stand or walk for less than two hours total, and would require the ability to both shift

positions at will and take unscheduled breaks during the workday. (T. 520-21.)  He additionally

opined that Plaintiff could occasionally lift and carry ten pounds, frequently look down, look up,

turn his head left or right and hold his head in a static position, occasionally twist, stoop, crouch,

squat and climb stairs, but never climb ladders, and occasionally use his fingers, hands and arms.

(T. 521-22.)  Dr. Breslow also stated that Plaintiff's main disability is his vision, which consists

of blindness in his right eye and 60-70 percent vision in his left eye. (T. 522.)

The ALJ afforded little weight to the majority of Dr. Breslow's opinion because his

conclusions were "not supported by objective findings or by substantial evidence," given that Dr.

Breslow has not provided "any rationale underlying these limitations other than a diagnosis of

diabetes mellitus, hypertension and vision problems" with "no explanation regarding how these

general diagnoses impact [Plaintiff's] exertional abilities, and the record contradicts this

opinion." (T. 22.)  The ALJ also noted that Dr. Breslow's assessment of Plaintiff's left eye

vision was inconsistent with evidence from treating eye specialist Joseph Gale, M.D. (*Id.*)  The

ALJ did, however, afford some evidentiary weight to Dr. Breslow's assessment of postural

functioning, finding that those limitations were "generally consistent with the record as a whole, the other opinion evidence, and [Plaintiff's] stated abilities and limitations." (*Id.*)

As an initial matter, the Court disagrees with Plaintiff that the ALJ failed to consider the relevant factors when assessing Dr. Breslow's opinion. Indeed, the ALJ explicitly relied on his assessment of whether the medical evidence supported and was consistent with the limitations opined by Dr. Breslow. Notably, although the ALJ did not point to specific evidence when discussing Dr. Breslow's opinion, his discussion of the medical and other evidence in other parts of the decision shows the basis for his conclusion that the opinion was inconsistent with the objective findings and other evidence. Additionally, the ALJ noted that he rejected Dr. Breslow's opinion regarding Plaintiff's inability to cope with stress in part because "he is not an expert in psychiatry/psychology," and noted that Dr. Gale was an eye specialist with expertise in vitreoretinal surgery when explaining why he was relying on the vision limitations opined by Dr. Gale over the potentially conflicting vision limitations opined by Dr. Breslow. (T. 18.) The ALJ also acknowledged that Dr. Breslow was a treating physician (although he did not explicitly detail the length, frequency, and nature of that treatment relationship) and it is clear from the ALJ's discussion of the evidence throughout the decision that he had considered the totality of Dr. Breslow's treatment notes in the record and thus would have been aware of the parameters of that treatment relationship. (T. 20-21.)

However, even if the Court were to find that the ALJ's discussion of the relevant factors was insufficient under *Estrella*, remand would nonetheless not be warranted here because a review of the record assures the Court that the ALJ complied with the substance or purpose of the treating physician rule. As discussed above, the decision as a whole indicates that the ALJ was aware of all of the underlying facts that are relevant to the consideration of a treating

10

Case 6:19-cv-01175-GTS   Document 14   Filed 03/15/21   Page 11 of 19

physician opinion, including the nature of the treating relationship and Dr. Breslow's lack of an applicable specialty in the areas of Plaintiff's impairments.  The Court is therefore assured that the ALJ was fully aware of the standard he was required to apply, and that he did apply that standard in a meaningful way.

The Court is also assured that the ALJ provided legally sufficient reasons for declining to rely more heavily on Dr. Breslow's opinion.  *See Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) (noting that failure to provide good reasons for not crediting the opinion of a treating physician is grounds for remand); *cf. Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019) ("A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment."); *Estrella*, 925 F.3d at 96 (noting that "[i]f the Commissioner has not otherwise provided good reasons for its weight assignment [while committing procedural error by failing to explicitly apply all the relevant factors], we are unable to conclude that error was harmless and consequently remand for the ALJ to comprehensively set forth its reasons").  As the ALJ notes in the decision, the medical records as a whole simply do not support the severe level of limitations opined by Dr. Breslow.  Indeed, the Court's review of the record failed to reveal evidence of exertional or other limitations as opined by Dr. Breslow, and most examinations showed no apparent difficulty with physical or mental functioning.  Inconsistency with the evidence constitutes a good reason for rejecting a treating physician's opinion.  *See Domm v. Colvin*, 579 F. App'x 27, 28 (2d Cir. 2014) (finding the ALJ's rejection of the treating physician's opinion supported where the ALJ found that opinion was inconsistent with the evidence, including the physician's own treatment notes, the conclusions of other medical sources, and the plaintiff's own testimony); *Luciano-Norman v. Comm'r of Soc. Sec.*, 16-CV-

1455, 2017 WL 4861491, at *6 (N.D.N.Y. Sept. 11, 2017) (Carter, M.J.) (finding good reasons for affording little weight to the treating physician's opinion where the ALJ found that opinion inconsistent with the other medical evidence in the record and the physician's own treatment notations), report-recommendation adopted by 2017 WL 4857580 (N.D.N.Y. Oct. 25, 2017) (Suddaby, C.J.).  As to Plaintiff's vision, the ALJ rejected Dr. Breslow's limitations as being unsupported and inconsistent with the treatment records from Dr. Gale; indeed, Dr. Breslow's opinion does differ from the many vision assessments performed by Dr. Gale during examinations, and the records do not contain any treatment for Plaintiff's eye condition by Dr. Breslow, nor any indication that Dr. Breslow ever even assessed Plaintiff's vision to any extent on examinations other than speculating whether his vision might be the cause of reported headaches in May 2015.  (T. 374-75.)  The ALJ also found that the opinions of Dr. Gale (a treating physician) and Brian Cole, M.D., (an examining physician) were more reliable estimates of Plaintiff's functioning.  For all of these reasons, the ALJ provided good reasons supported by substantial evidence for declining to rely on the majority of Dr. Breslow's opinion. *See Meyer*, 794 F. App'x at 26 (finding that the ALJ provided good reasons when rejecting the treating physician's opinion based on finding that the opinion was inconsistent with the medical and other evidence and was heavily based on the plaintiff's unsubstantiated self-reports).

Nor did the ALJ err in relying on the opinions of Dr. Gale and Dr. Cole.  The ALJ afforded significant weight to the opinion of Dr. Gale, noting that he is a specialist treating source who was familiar with Plaintiff's visual impairments.  (T. 21.)  The record substantiates that Dr. Gale personally treated Plaintiff for his vision impairments for years and his opinion is consistent with his findings in those treatment notes.  The ALJ also afforded significant weight to the opinion of Dr. Cole, whose opinion was consistent with his objective observations from the

12

examination he conducted and whose visual limitations were generally consistent with Dr. Gale's opinion.  (T. 21-22.)  Plaintiff offers no argument as to why the ALJ should not have relied on these sources' opinions, but rather merely asserts that these opinions were "incomplete" because they did not contain an explicit assessment of Plaintiff's exertional functioning.  (Dkt. No. 11, at 20-21 [Pl.'s Mem. of Law].)  However, whether or not these physicians specifically opined regarding Plaintiff's ability to sit, stand, walk, lift, or carry does not detract from the fact that they made opinions on other work-related abilities that must be considered; a source need not render an opinion about every aspect of a claimant's functioning in order for that opinion to be valid or helpful.  The opinions of Dr. Gale and Dr. Cole provide substantial evidence to support the ALJ's findings related to the areas of functioning about which they opined.

Plaintiff also tangentially argues that the ALJ improperly interpreted medical data and relied on his own lay opinion by concluding that Dr. Gale's opinion is inconsistent with Dr. Breslow's opinion.  (Dkt. No. 11, at 18-19 [Pl.'s Mem. of Law].)  However, the ALJ did not rely on his own lay opinion or interpretation when discounting Dr. Breslow's opinion that Plaintiff was blind in his right eye and had only 60-70 percent vision in his left eye, but rather he relied on Dr. Gale's testing.  (T. 22.)  Notably, Dr. Gale opined that Plaintiff's best corrected vision in his left eye is $20/20^{-2}$, while his best vision in his right eye was "HM" (or the ability to discern hand motions).  (T. 287.)  This is generally consistent with the fluctuating visual acuities measured by Dr. Gale at examinations in 2017 and 2018.  (T. 263, 266, 269, 286.)  Thus, the testing shows that Plaintiff was not wholly blind in his right eye as opined by Dr. Breslow, and, regardless of whether the ALJ had the capacity to interpret visual acuity values in terms of percentages, the ALJ relied on the values obtained by Dr. Gale through vision testing when formulating the RFC rather than any self-manufactured percentage of vision.  Lastly, Dr. Gale specifically opined that

13

Plaintiff could perform frequent near and far acuity tasks, and thus the ALJ was not necessarily even relying on the visual acuity measurements provided by either doctor, but on the opinion of functional limitations resulting from Plaintiff's assessed visual field provided by Dr. Gale.  (T. 289.)  Dr. Breslow, on the other hand, did not explain what functional limitations resulted from the opined vision deficits.  (T. 520-22.)  The ALJ therefore did not rely on his own lay opinion when making a determination regarding Plaintiff's visual abilities.

The Court also rejects Plaintiff's argument that the ALJ should have recontacted Dr. Breslow for further explanation about how the opined limitations resulted from Plaintiff's specific diagnoses.  "'The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record.'" *Raftis v. Comm'r of Soc. Sec.*, 17-CV-0514, 2018 WL 1738745, at *6 (N.D.N.Y. Apr. 6, 2018) (Carter, M.J.) (quoting *Guillen v. Berryhill*, 697 F. App'x 107, 108 [2d Cir. 2017]).  "Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source." *Raftis*, 2018 WL 1738745, at *6 (citing *Janes v. Berryhill*, 710 F. App'x 33, 34 [2d Cir. 2018]).  Here, there was nothing missing from the record that the ALJ required to make an assessment of Plaintiff's disability status.  Although the ALJ did note that he was rejecting Dr. Breslow's opinion in part because Dr. Breslow had not explained how Plaintiff's diagnoses caused the opined limitations, the ALJ also noted that "the record as a whole contradicts this opinion."  (T. 22.)  Given that the treatment evidence as a whole (including the treatment notes from Dr. Breslow) does not support the limitations in Dr. Breslow's opinion that the ALJ rejected (including exertional limitations), there was no requirement to recontact Dr. Breslow for further information.

14

Lastly, the ALJ did not err in finding that Plaintiff was capable of medium work, or, even if he did, such error is harmless under the circumstances.  The ALJ is not required to choose one opinion over another, but rather to weigh the totality of the medical and opinion evidence when assessing the RFC.  *See Angela G. v. Comm'r of Soc. Sec.*, 19-CV-1521, 2021 WL 22609, at *6 (N.D.N.Y. Jan. 4, 2021) (Lovric, M.J.) ("In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion.") (collecting cases).  Here, the ALJ was required to strike a balance between two opinions because neither represented the extent of Plaintiff's functioning that supported by the evidence in the record as a whole; he rejected Dr. Breslow's exertional limitations as being unsupported, but also found that the medical evidence showed that Plaintiff was more exertionally limited than accounted for by the opinion of Dr. Cole.[1]

Plaintiff appears to argue that because Dr. Breslow was the only physician to have offered an explicit opinion about Plaintiff's exertional capabilities, the ALJ was required to adopt its findings.  However, there is no legal precedent that can support requiring an ALJ to rely on an opinion that, as here, is so clearly contrary to the evidence in the record.  Indeed, an ALJ is entitled to rely on his own assessment of the medical evidence when formulating the RFC in the absence of a formal opinion "where the medical evidence shows relatively little physical impairment."  *Brado v. Comm'r of Soc. Sec.*, 15-CV-1444, 2017 WL 87042, at *5 (N.D.N.Y. Jan. 10, 2017) (Suddaby, C.J.) (quoting *House v. Astrue*, 11-CV-0915, 2013 WL 422058, at *4

---

[1]     Although Plaintiff argues essentially that Dr. Breslow was the only source to offer an opinion related to Plaintiff's functionally capacity, that is simply not true.  The fact that Dr. Cole did not explicitly state in his opinion that there were no limitations in Plaintiff's abilities to sit, stand, walk, lift, or carry does not mean that he failed to assess those activities; rather, his examination shows that he assessed Plaintiff's physical capabilities, but the findings did not reveal any abnormalities other than headaches and leg weakness with squatting.  (T. 528-30.)

[N.D.N.Y. Feb. 1, 2013] [Sharpe, C.J.]).  Here, the treatment notes contain almost no evidence that suggests that Plaintiff has any exertional restrictions as a result of his severe impairments. The Court therefore finds that the ALJ did not err in assessing the medical evidence when formulating the RFC, even in the absence of an opinion that specifically found Plaintiff capable of performing medium work.

However, even if the ALJ committed an error in limiting Plaintiff to medium work in the absence of a formal opinion, any such error is harmless under the circumstances because nothing in the record indicates that Plaintiff was more limited.  The Court notes in particular that there is no evidence in the record other than Dr. Breslow's unsupported opinion and Plaintiff's self-reports to indicate the existence of any exertional limitations.  Thus, even if the ALJ's finding of medium work does not stem from a clear source, the Court cannot say that this error would be harmful, given that the evidence in the record (including Dr. Cole's examination and opinion) suggests that Plaintiff has essentially *no* discernable exertional limitations resulting from his medically determinable impairments.  Because Plaintiff has failed to provide any credible evidence that he is unable to perform medium work as that term is defined in the regulations, any error committed by the ALJ in limiting him to medium work in the RFC is harmless and does not require remand.  *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (finding that remand was not required when application of the correct legal principles could only lead to the same conclusion); *Bilecki v. Comm'r of Soc. Sec.*, 15-CV-1045, 2016 WL 6208538, at *9 (N.D.N.Y. Oct. 24, 2016) (Suddaby, C.J.) ("Any limitations in the ALJ's RFC finding that were *additional or greater* than the limitations identified by the medical opinions would not prejudice Plaintiff and therefore do not require remand.").

For all of the above reasons, the Court finds that remand is not warranted on this basis.

16

2.    **Whether the ALJ's Assessment of Plaintiff's Subjective Symptom Reports is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 12, at 17-20 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff essentially argues that the ALJ's assessment of Plaintiff's subjective reports requires remand because he did not consider the factors required for that analysis by the regulations.  (Dkt. No. 11, at 23-25 [Pl.'s Mem. of Law].)  However, this argument fails to read the ALJ's decision as a cohesive document.  Notably, throughout the decision, the ALJ discussed the objective medical evidence and indicated where it was inconsistent with allegations of disability or greater limitations.  (T. 19-21.)  The ALJ also discussed Plaintiff's activities of daily living, which included reports that, although he receives "some help" from his family for things like managing money, dressing, and bathing, he continued to drive a car on a limited basis.  (T. 18.)  The ALJ also noted treatments, including eye surgery, and the fact that Plaintiff's headaches, dizziness, and diabetes appeared to be controlled by medication.  (T. 20-21.)  The ALJ therefore considered multiple enumerated factors as part of his analysis, and Plaintiff has not made any argument as to why factors not discussed are relevant or necessary in the factual context presented here.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) ("Because the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his . . . determination does not require remand."); *Ahearn v. Comm'r of Soc. Sec.*, 19-CV-0704, 2020 WL 6505166, at *4-5 (W.D.N.Y. Nov. 5, 2020) (finding the ALJ's assessment of plaintiff's subjective reports was supported by substantial evidence where the ALJ relied on inconsistency with the objective medical evidence, as well as her treatment and daily activities);

*Darron O.*, 2020 WL 6498717, at *9 (finding that the ALJ's discussion of medical evidence that was contrary to the plaintiff's subjective reports provided support for the ALJ's evaluation of those subjective reports); *Brenda Lynn S. v. Comm'r of Soc. Sec.*, 19-CV-0999, 2020 WL 5802272, at *12 (N.D.N.Y. Sept. 29, 2020) (Dancks, M.J.) (finding the ALJ's evaluation of the plaintiff's subjective complaints was supported by substantial evidence where the ALJ cited inconsistencies with the objective medical evidence and with other contrary activities of daily living reported by the plaintiff).

Additionally, Plaintiff does not make any arguments related to why the ALJ should have instead credited his reports.  Indeed, Plaintiff does not even address what subjective reports he believes were unfairly discounted.  The ALJ explicitly discussed many of Plaintiff's reports related to exertional capabilities, his vision, his headaches and dizziness, and his functional capacities and provided reasons for declining to rely on those subjective reports.  Plaintiff has not shown that this assessment was deficient in any way that would require remand.

For all of the above reasons, the Court finds that remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 15, 2021
       Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge